That's correct. And Mr. Mitchell, you represent Akers. Correct. Represent the appellants. Ms. Akers and Ms. Nozell, the plaintiff's appellants. Yeah. Good to have you with us, sir. Thank you, Your Honor. Good to be with you as well. Thanks for having me. May it please the court. Mr. Mitchell. Mr. Mitchell, what makes this case different from all the cases in the other circuits where courts have held that unions are not required to repay representation fees, pay dividends, and so forth? Factually, there really is no distinction, Your Honor. There's no basis on which we can say that this case presents a different set of facts from the cases that were presented in those other courts. And Your Honor correctly observes that the other courts of appeals so far that have considered this issue, I believe we're up to five, have upheld the notion that the union can assert a good faith defense in this situation. But with all respect to those courts, we don't believe they've answered or refuted the argument that we're advancing before this court. And in some of those cases, not all, but in some, this argument was not even presented. The claim we're making is somewhat more nuanced than denying even the existence of a good faith defense. What we're saying to this court is that even if one assumes that the good faith defense exists under Section 98 of the Braintree and that it's available for a private party to use, the scope of that defense will shield the defendant only from a remedy of damages, not from a remedy of restitution. There's a fundamental distinction in our view between a remedy that forces a defendant to pay out money in compensation for a harm that has been inflicted, as opposed to a remedy that merely requires a defendant to return property or money that it never should have been allowed to take in the first place. And none of the other courts of appeals that have rejected the position that we're advancing today have addressed this contention, nor have they distinguished the authorities that we're relying on in our brief. And Judge Thacker, there's no strength in numbers when it comes to deciding a question of law. These decisions from other courts are not binding authorities. They can be followed only if this court, in its independent judgment, finds the reasoning of those cases persuasive. But you would have us create a circuit split. I believe that's right, Judge King. I don't think there's any way to rule in our favor without creating a circuit split, unfortunately. And there may be some understandable reluctance to do that in this particular situation. But again, we don't believe the mere fact that other courts have ruled the union's way is controlling here. It's certainly not controlling. It doesn't compel an outcome in the union's favor. The union still has to show why those decisions from other courts were correctly decided, and more importantly, the union needs to show why the specific argument we're advancing today is wrong. And there's nothing in those other opinions from the courts of appeals that has effectively distinguished the cases and authorities that we're relying on, which have consistently held that when a defendant acts in reliance on a statute that is believed to be constitutional at the time it acts and that is later declared unconstitutional, the defendant still has to return the money or property that it took in admitted good faith but in violation of another's constitutional rights. Mr. Mitchell, this is Floyd. Did you use the term or argue the concept of restitution below? Yes, we did. That was the theme throughout our district court briefing, not only in this case but in other cases similar to this that we've brought in other courts. But you did, my question I guess, did you actually use the term restitution? I'm almost certain we did. I haven't read my district court briefing in preparation for this argument. But the distinction that we have drawn throughout this litigation, not only in the district court but also in every court of appeals where this case has been litigated, has been a distinction between a remedy for damages on the one hand and a restitution or remedy on the other. So a remedy that simply compels the return of property or money that was taken in violation of the Constitution, even if it's taken in good faith, still should be returned to the rightful owner. And to answer your Honor's question, I will pull up my district court briefing just to confirm that the word restitution appears in the briefing that we submitted below. But Mr. Diane has never suggested in his brief that we waived or forfeited this argument by failing to raise it in the district court. This has been the argument that we've been making throughout the litigation. So again, consider United States against Windsor. This is a case where the IRS had collected taxes in good faith reliance on the Defense of Marriage Act. Before the Supreme Court had declared the Defense of Marriage Act unconstitutional. The government's good faith reliance on that statute did not allow it to keep the taxes that it had collected from Ms. Windsor in violation of her constitutional rights. Even though the good faith would have protected individual tax collectors from lawsuits for damages if Ms. Windsor had sued them for emotional distress for the dignitary harm that she had suffered from not having her marriage recognized. There's the distinction again between a remedy for damages in which qualified immunity or good faith can shield the individual officer. And a remedy that seeks simply restitution. Return the taxes that you never should have been allowed to take in the first place. When the FBI searched Congressman William Jefferson's office and reliance on a search warrant that was later declared unconstitutional. The FBI still had to return the documents that had seized from Congressman Jefferson in violation of the speech and debate clause. The FBI's good faith reliance on the search warrant would immunize it from lawsuits for money damages. But it still had to return the property that was taken in violation of the Constitution. And then consider Wyatt against Cole from the Fifth Circuit on remand from the Supreme Court. In that case, property that was seized in good faith reliance on a pleb and statute that was later declared unconstitutional had to be returned. Even though the defendant who seized the property was awarded a good faith immunity from damages that arose out of the unconstitutional seizure. So neither could faith nor qualified immunity. Either of these defenses, even though they will apply in a section 1983 lawsuit, they won't extend to the point that they allow a defendant to escape a restitutionary remedy. These defenses, to the extent that they exist, can confer only an immunity from damages for the collateral harms inflicted by an unconstitutional seizure of property. But no one winds up getting a windfall for violating the Constitution, even when the violation occurred in the utmost good faith. There's been a lot of discussion in the briefing about the notion of fairness and equity. And whether it would be fair or equitable to require the union to return money that it took from the plaintiffs at a time when the actions were believed to be constitutional. And at a time when the actions were explicitly authorized by a state statute. But this is actually the paradigmatic situation for Section 1983 liability. Before Monroe against Pape, the only way you could sue someone under Section 1983 was if their conduct was specifically authorized by state law. Monroe changed that regime and allowed plaintiffs to sue under Section 1983 for actions that were not authorized by state law or that were committed in explicit violation of state law. But it has always been the understanding under Section 1983 that an unconstitutional action that is explicitly authorized by a state statute is the very core of what Section 1983 is designed to target. Actions that violate the federal Constitution that are nevertheless committed under color of state law. And being specifically authorized by state law is as much as you can get to being under color of state law as is legally possible. Now, it's still possible to think the Supreme Court was wrong in Janus to say that this conduct violated the Constitution. It was a 5 to 4 decision. There was a very strong dissent from Justice Kagan. It's also possible the Supreme Court is wrong to have said that there are holdings in cases of constitutional magnitude will automatically have retroactive effect. That was a decision they made in 1993 in a case called Harper against Virginia Department of Revenue. And it repudiated the old regime from Chevron Oil that took a more contextualized approach to retroactivity in civil litigation. But the Supreme Court's holdings on those matters are binding on the lower courts. This was a violation of the plaintiff's constitutional rights given what the Supreme Court said in Janus. And Janus is retroactive given the holding in Harper against the Virginia Department of Revenue. To the extent there's any inequity or unfairness, there really isn't any plausible argument the union can make that it's unfair to allow the plaintiffs a remedy that merely requires the union to restore the money that the Supreme Court has said it never should have been allowed to take in the first place. How much money are you talking about? Only within the statute of limitations, Judge King. We're not asking or even suggesting that the union could be on the hook for all the agency fees they took from the beginning of the agency shop arrangements. It's a small window of two years under Maryland law. And it would only be, if it's only these two plaintiffs, whatever amount of money they paid in agency fees during that window of time. It would be in the hundreds, perhaps a small four-figure sum for each individual plaintiff. It wouldn't be much more than that. Now, we did bring the lawsuit as a class action, but the class hasn't been certified yet. I'm not sure whether the class would be certified under the standards of Rule 23. That would be a hotly contested issue. I know in other contexts, people who have tried to get classes certified in these refund lawsuits have not been able to do so. So it would be a small amount if these proceed as individual cases. It would be a larger amount, obviously, if a class action were certified, but we haven't gotten yet to that point in the litigation. So the other issue to consider is that the union is proposing a good-faith defense that extends well beyond the qualified immunity that's available to government officers. The good-faith defense has been based on the defense of qualified immunity. It's the same type of idea. A government officer who acts in reasonable reliance on a statute that is believed to be constitutional at the time is not liable for damages under the doctrine of qualified immunity. And the union is borrowing from that concept to extend that defense or that type of defense to private actors who violate Section 1983. But the union is proposing a somewhat different defense with respect to the scope. The defense of qualified immunity protects only individual government officers, not entities. Municipal corporations, for example, can't claim qualified immunity at all under Section 1983. That's the holding of Owen against the City of Independence. The union, though, says that not only individual people but also entities such as unions and presumably municipal corporations should have a good-faith defense under Section 1983 when they are acting as private parties who've violated another's constitutional rights under color of state law. It's not clear why those two situations should be treated differently with respect to qualified immunity on the one hand and the good-faith defense on the other. And I see my opening time has expired. If the court has questions, I'm happy to answer them now. But otherwise, I'd like to save the rest of my time for rebuttal if I could. Thank you, Mr. Mitchell. Thank you, Your Honors. Mr. Dianne? Thank you, Your Honor, and may it please the court. There's a reason why there is an extraordinarily broad consensus among the circuit courts. Going back to the 5th Circuit's Wyatt decision decades ago and continuing through the recent series of post-Janus decisions in the 1st, 2nd, 3rd, 6th, 7th, and 9th Circuits. That's six circuits who have embraced the proposition that private parties who invoke presumptively valid state laws to seek the aid of government officials are not subject to monetary remedies under Section 1983, but instead are protected by a good-faith defense against those particular remedies. And the reason is this. Before the Supreme Court's decision in Lugar in 1982, it was an open question whether Section 1983's under-color-of-state-law clause was even broad enough to reach private parties, whose connection to state action consisted of nothing more than merely invoking a presumptively valid state statute to seek the aid of government officials. And when the court decided Lugar, even those justices in the majority who said that Section 1983 was broad enough to reach that type of private party recognized the force of a point made by the four dissenters, and their point was that there was a potential for serious injustice in subjecting a private party to monetary liability for invoking governmental processes in good-faith reliance on a seemingly valid statute. So the Lugar majority recognized that subjecting people to monetary liability in that circumstance was a problem. That's the majority's word. Could you address how you've established the good-faith defense in this case? Oh, sure. that it complied with every aspect of the Abood regime. So, you know, our position is that where there is – and this is what all of the circuits that have addressed this have held – that where there is a statute that authorizes the conduct complained of, and the Supreme Court has affirmatively held that statute or one totally indistinguishable from it to be valid, when those two things – when those confluence of things occurs, you know, the good-faith defense is established as a matter of law. And if you look at Justice Kennedy's concurrence in Wyatt, which is really the fountainhead of the good-faith defense that came out of Wyatt, Justice Kennedy says that, you know, where there's reliance on a statute, that's an objective basis for finding a good-faith defense such that you don't need to do some sort of case-by-case inquiry into the particular state of mind of the particular, you know, officials of the defendant who followed the law and followed Supreme Court principles. And I should say that all – if I haven't already – all of the six circuits that I mentioned came – those cases all came in this posture, on a 12b-6. And in all of them, the courts recognized what I just said, and that's why they affirmed 12b-6 grants. So I was just going to get back to sort of the origins of the good-faith defense, because I think once you understand those origins, then all of the arguments we've heard fall by the wayside. So going back to the Lugar decision in 1982, the majority responded to the dissent's concern about the injustice of subjecting private parties to monetary liability when they relied in good faith on state statutes and government officials. They responded with a footnote 23, which is critical in the development of this doctrine. The court said, this problem should be dealt with not by changing the character of the Section 1983 cause of action, but by establishing an affirmative defense to monetary liability. And then the court said that that issue, however, was a remedial issue – that was the court's term – to be decided in subsequent proceedings. So that's Lugar. Then about a decade later, the Supreme Court picks up the thread in Wyatt and expresses the exact same concern for private parties who rely on presumptively valid statutes. And while the majority in Wyatt didn't reach the issue because the defendant there sought full-blown qualified immunity, and not just the good-faith defense being sought here, the court's reasoning, as well as that of the concurring and dissenting opinions, which did reach the issue and amounted to five votes that were explicit in stating that there should be a good-faith defense. Even the majority's reasoning, putting aside the five concurring and dissenting votes, the majority's reasoning pointed the way to what the lower courts uniformly have held since Wyatt, which is that there is this good-faith defense to monetary liability. Now, the plaintiff here, in his brief, and we just heard Mr. Mitchell's presentation, he doesn't dispute that there is a good-faith defense available to Section 1983 private party defendants. So the only question really before the court is whether the defense applies to the circumstances alleged here. And the answer is that the defense plainly does apply. There are two features of this case that actually make it an especially strong candidate for application of the good-faith defense, stronger than the earlier generation of 1990s court of appeals cases that addressed good-faith defense outside the labor context. And those two features are, first, that the union here was not merely relying on a presumptively valid state law whose validity had not been tested in court. That was the early fact pattern. That was Wyatt itself. Here, the unions were relying on state laws, and I said this before, but it bears emphasis, they were relying on state laws identical to the law in Abood, the Michigan statute, which had of course been tested and affirmatively declared constitutional by the highest court in the land in the Abood case. And then the second feature of this case that makes it particularly strong is that the fees that the unions collected here were required by the Maryland representation fee statute to be expended for the purpose of benefiting all employees whom the union represented, member and non-member alike. So the union, there's no dispute that the unions expended these monies for the purpose of benefiting both members and non-members like the plaintiffs. The unions didn't, as the Ninth Circuit said in Danielson, the unions did not, you know, the union did not sort of stick these fees in a vault or put them in some segregated account to try to earn profits off of these fees. The unions spent the funds that they collected on providing services to all those whom they represent, including those in the class of non-members that the plaintiffs are purporting to sue on behalf of. So, and that last fact, the fact that the funds here were expended for the purpose of benefiting those whom the union was statutorily obligated to represent, that fact alone distinguishes this case from the whole host of non-Section 1983 cases that Mr. Mitchell cites. In none of those cases was there a Section 1983 claim, and in none of them did the defendant accept the money or property and then expend it under a statutory duty or other duty towards others so that the funds were not available and segregated such that they could easily be returned. In each case, and I think that multiple courts have addressed this, the Ninth Circuit in Danielson, Judge Wood's opinion for the Seventh Circuit and Janice on remand, explained that you can't unscramble the egg here, and that distinguishes this case from the kinds of cases that Mr. Mitchell has cited. Now, I want to address the restitutionary theory that's really at the, I think, at the heart of Mr. Mitchell's presentation to this court. The first argument is that, that's been made in the briefs by Mr. Mitchell, is that the good faith defense does not apply where a plaintiff is seeking equitable relief. And Mr. Mitchell asserts that the restitutionary relief being sought here is a form of equitable relief. And I think this argument is wrong. It rests on two premises, both of which have to be correct for the argument to succeed, and neither one of which is correct. The first premise of the argument is that a person seeking the return of money or property unconstitutionally transferred to a third party isn't pursuing an action at law for damages, but is instead pursuing a remedy that sounds in equity for equitable restitution. And the second premise is that there's no good faith defense to actions in equity that would seek a refund of money unconstitutionally transferred. And as I said, both of these would have to be right for the plaintiffs to even get their foot in the door here, and they're both wrong. As for the first premise, I think it suffices to say that the Supreme Court's decisions in Knudsen and Montanil, and we discussed those cases at length in our briefs, those cases reject that first premise. They explain that an action to seek money from the defendant to compensate for a loss to the plaintiff is an action at law, not equity, unless at a minimum the money was sequestered in a segregated account. And the Seventh Circuit's decision in Mooney addresses this thoroughly, the Ninth Circuit's decision in Danielson, the Sixth Circuit's decision in Lee, all reject that premise on the grounds I just stated. The union's general treasury does not qualify as a segregated account under those cases and under the Supreme Court cases that they follow. And then there's an equally fundamental problem with calling this or labeling this something other than damages and trying to call it restitution. Was there a question for me? Okay, I'm sorry. Yeah. Go right ahead. Oh, I'm sorry. Yeah. So it's conceptually wrong, I think, to think of it as something other than damages because restitution is, of course, measured by the defendant's gain or unjust profit and not by the plaintiff's loss. And these fees are just an effort to recoup the plaintiff's losses. So they're classic damages. There's no allegation, nor could there be, that the unions made any net profit off of agency fees because the entire structure of the Maryland representation fee system was that those fees could be collected, but only if expended, and only if expended to benefit member and nonmember alike on representational activities. So that's just the first premise of the restitution argument being wrong. The second premise, which assumes that if you can label the thing or the kind of cause of action equitable restitution, then the good faith defense somehow disappears. That's also incorrect. And that's because the Supreme Court recognized in the Lemon 2 case, that's the less famous Lemon v. Kurtzman case. It was a follow-on to that Establishment Clause case where the court said that those religious programs that had already committed funds in reliance on, I believe it was a New York statute, that was declared unconstitutional in Lemon 1. In Lemon 2, the court said, well, wait, those religious entities who received these monies, though we now know they were transferred in violation of the Establishment Clause, they do not need to return that money. In fact, the court even said that for work already performed where they hadn't even collected, they could collect the payments that would not put them out of pocket, so to speak. So this is how far afield it goes, that even if you call it equitable, there's still a good faith defense under Lemon, as well as in the Ellis case, which was an agency fee case, post-Abood, where the court found that one of the expenditures that the union made really exceeded the union's authority under the Abood doctrine. But the court still didn't require, in addressing the remedy, the court said the union did not have to return those funds because they had been expended on a program that was of benefit to non-members. So this supposed universal principle that the plaintiffs rely on really isn't universal at all. It's inconsistent with those Supreme Court cases that I just referenced. For good measure, it's also inconsistent with the common law approach to addressing the situation where a plaintiff has paid money to a defendant pursuant to a seemingly valid law, and the defendant then expended the money in good faith before the law was found invalid. We cited sections from the restatements on restitution in our briefs that lay out that principle and cite cases where a defendant, who again, both collected and expended monies in good faith reliance on a statute later declared unconstitutional, was permitted to retain those funds, and the plaintiff was denied a restitutionary remedy. So, I mean, that's, there's really, I think there's a, it's unusual in this era, I think, to see six circuits looking at the same problem, you know, for the first time in the wake of Janus, and all coming to the same conclusion. And I think the reason that they have done so is because the good faith defense is solidly grounded in those Supreme Court cases, Lugar and Wyatt, and solidly grounded in the court of appeals cases that immediately followed them. And there is a common law basis for the defense in that, as I think the most clear exposition of this was Judge Sutton's opinion for the Sixth Circuit in the Ogle case. The courts have said that the 1870 Congress that adopted Section 1983 would have been very surprised to see a private party who, in reliance on a state statute and procedure, would be required to return monies collected and expended in good faith. Because, unlike a private party guilty of the tort of conversion, who is resorting to self-help, a party that is going through channels and going through law and following statutes and official procedures to secure money or property from another would only be found responsible for damages to the person if, in fact, they were abusing the process and not acting in good faith. And that's why the circuits have said that the most analogous tort is the abusive process tort. Because the unions here, again, were not resorting to self-help, but were following state law and state processes in collecting and expending these agency fees. And since a common law, a party relying in good faith on state laws and procedures would only be found liable if they had malice and lacked good cause for doing what they were doing at the time, there should be no liability here. And that, unless the court has questions, I'll conclude. Thank you very much. We appreciate that. Good job. Mr. Mitchell? Thank you, Your Honors. Judge Floyd, in response to your earlier question, I did look at our district court briefing and have the pin site to provide for you if needed. But it's on page 29 of our district court brief, which is ECF document number 86, where we specifically assert that the good faith defense cannot confer an immunity from a restitutionary remedy or a remedy that is trying to pursue unjust enrichment or the recovery of an unjust enrichment that the defendant obtained. To be clear, and Mr. Diane said this during his presentation, we're not disagreeing with the unions over the existence of the good faith defense. Our disagreement concerns the scope of this defense. And our claim is not that the good faith defense is categorically unavailable. Our claim is that if one assumes the existence of the good faith defense, consistent with rulings from other courts of appeals that have held that private defendants can assert a good faith defense under Section 1983, that defense cannot extend so far as to protect a defendant from a remedy that merely seeks the return of money or property that has been taken in violation of another's constitutional rights. There's no example from any other area of law where a defendant who takes money or property and admitted good faith and reliance on a statute that is later declared unconstitutional is then allowed to keep the money or property that was taken on the ground that the defendant believed his conduct to be constitutional at the time that he acted. And Mr. Diane suggests that there are two features of this case that make it different from the other cases that we cite in our briefs. One point he makes is that the union in this case was relying not only on a state law enacted by the Maryland legislature. They were relying on a state law that the Supreme Court of the United States had upheld in Abood before Abood was overruled. So they were relying on essentially more than just a state statute. They were relying on a state statute combined with a Supreme Court pronouncement that had appeared to bless the constitutionality of that statute. And Mr. Diane is factually correct to make that observation. But it doesn't distinguish the authorities we're relying on because in the United States against Windsor, the IRS had collected taxes in reliance on the Defense of Marriage Act, a federal statute, but also in reliance on Baker against Nelson, which was still the law in 2013, and which had indicated that statutes that define marriage as the union between a man and a woman are constitutional. And that the idea of a constitutional challenge to statutes of this sort would not even present a federal question under Article III of the Constitution. So in like manner, the IRS was relying on a federal statute, a congressional enactment, as well as a Supreme Court decision. And they still had to return the money, and properly so. They should have had to return the money given the holding of the Supreme Court that it was taken in violation of the Constitution. That money was taken in good faith to be sure. They relied on the statute, just as the union did, and they relied on the Supreme Court decision, just as the union did. But they still had to return the money. Good faith and qualified immunity would protect individual IRS agents from liability if Ms. Windsor had tried to sue them for additional damages or collateral harms that had been inflicted by the unconstitutional seizure of her money. She could not, for example, maintain a claim against the IRS officers who collected her taxes for infliction of emotional distress. That would be barred by qualified immunity. Or if one prefers, it would be barred by the good faith defense. But neither of those defenses would allow the government to keep the money. The second point that Mr. Dayan makes is that this money that was taken from the plaintiffs was used to benefit union members and non-union members alike. And again, Mr. Dayan is factually correct to observe that the union was under a statutory duty to represent all members of the bargaining union without discrimination based on their status as a union member. But again, this fact was equally present in Windsor. The taxes that were collected from Ms. Windsor were deposited in the federal treasury to be spent for the benefit of all Americans, including Ms. Windsor, who had her money wrongfully taken from her. And again, that could not be used to defend the idea that the federal government could keep money that was taken in good faith, but nonetheless in violation of another person's constitutional rights. This is an unusual case. We don't see many lawsuits that are brought against private defendants under Section 1983. That itself makes this case somewhat unusual. And that's why there aren't many cases on the good faith defense. There are, to my knowledge, the Fourth Circuit has never issued a ruling on whether the good faith defense even exists. And the cases that come from other courts are few and far between. So there isn't much case law out there defining the scope of this defense until these union refund lawsuits were being brought in the wake of Janus. But I want to make another point about Mr. Dayan and whether this is an equitable remedy. Mr. Dayan, during his argument, cited Lemon v. Kurtzman on remand to the Eighth Circuit. But this case does nothing to support the argument for a good faith defense, and I want to explain why. The plurality opinion in Lemon explained that the reason it would not force those school districts to return the funds was because the holding of Lemon v. Kurtzman was not retroactive. Under the three-part test for retroactivity established in Chevron Oil, which was the law governing retroactivity at that time. This was not a case that held that there was a good faith defense. Lemon v. Kurtzman is a case that held that the holding on the constitutional point was not even retroactive in the first place. And that was a plausible holding in the 1970s when the three-part test from Chevron Oil governed the retroactivity question. That's not the case today because Harper overruled Chevron Oil, and Harper holds that all Supreme Court rulings are retroactive automatically. And there's no more contextualized three-part test that's applied under Chevron Oil. So the Lemon v. Kurtzman test doesn't do anything to support the claim for a good faith defense and why good faith as a defense should allow the union to keep the money here. And I'm running short on my time. If the court has further questions, I'm happy to answer them. But if not, I will yield my time back to the court. Judge Floyd, Judge Thacker, you have further questions? No, sir. No, I don't. Thank you, Your Honors. Thank you very much, Mr. Mitchell. If we were in Richmond with you, we would at this time leave the bench and come to the well of the court and greet each of the lawyers and commend them on their efforts. You have to use your imagination on that score today. Hopefully it won't be long. We'll be back to Richmond to hear our cases. But we will take your case under advisement.
judges: Robert B. King, Henry F. Floyd, Stephanie D. Thacker